OPINION
{¶ 1} Appellant Laura Harbaugh, the natural mother of Helen Estepp, appeals a judgment of the Fairfield County Common Pleas Court, Juvenile Division, awarding permanent custody of Helen to appellee Fairfield County Children's Services:
 {¶ 2} "THE DECISION OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF APPELLNAT'S CHILDREN TO FAIRFIELD COUNTY CHILDREN'S SERVICES WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE, AS THE RECORD DOES NOT CONTAIN CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST AND THAT THE CHILDREN CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME.
 {¶ 3} THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO DISMISS THE COMPLAINT WHERE THE COMPLAINT FAILS TO ALLEGE CLEAR AND ESSENTIAL FACTS."
 {¶ 4} Helen Estepp was born on March 26, 2002. At the time of her birth, appellee was involved with appellant concerning the dependency and temporary custody of Ryan Duvall, Helen's half-brother. On March 27, the day after her birth, appellee filed a complaint alleging that Helen was a dependent child, and she was placed in the shelter care custody of appellee on the same day. As the case was not disposed of within ninety days, the complaint was dismissed, and a new complaint was re-filed on June 4, 2002.
 {¶ 5} On June 4, Helen was again placed in the temporary custody of Fairfield County Children's Services, under the new case number. Again, the case was not disposed of in a timely fashion, and was re-filed. After yet another re-filing, the case finally proceeded to trial under the current case number on January 16, 2003, and January 29, 2003.
 {¶ 6} Following trial, the court terminated appellant's parental rights, and awarded appellee permanent custody of both Ryan and Helen. Appellant appealed the judgment awarding permanent custody of Ryan to appellee, and this court affirmed on August 14, 2003. In Re: Duval,2003-Ohio-4313.
 I {¶ 7} In her first assignment of error, appellant argues that permanent custody was not in the best interest of Helen, and that appellee failed to prove that the child could not be placed with her within a reasonable time.
 {¶ 8} We first address appellant's claim that the evidence did not support the court's finding that permanent custody was in Helen's best interest. R.C. 2151.414(D) provides that in determining best interest, the court shall consider all relevant factors, including but not limited to the interaction and relationship of the child with his parents, siblings, relatives, foster parents, and other care providers; the wishes of the child, as expressed directly by the child or through the guardian ad litem; the custodial history of the child, including whether he has been in the temporary custody of children's services for twelve or more months of consecutive twenty-two month period; and the child's need for a legally-secure permanent placement, and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 9} There is evidence in the record that appellant had difficulty bonding with Helen. She refused to talk to Helen at first during visitation, and told the agency there was no reason to speak to her, as the agency was probably going to take her away anyway. Appellant failed to grasp the importance of bonding with Helen, regardless of her situation. There was evidence that during visitation, appellant was able to concentrate on only one child at a time. During one visit, appellant would not continue feeding Helen, because Helen spit up on her. The evidence reflected that Helen needed a legally-secure placement. The evidence supports the court's finding that permanent custody was in the best interest of Helen.
 {¶ 10} We next address appellant's claim that the evidence did not support the court's finding that the child could not be placed with her within a reasonable time. She argues that she completed her case plan objectives.
 {¶ 11} The evidence demonstrated that appellant needed to address parenting skills, homemaking skills, and meeting the basic needs of her children. The case plan provided that appellant was to meet with Melinda Winegardner to participate in homemaking sessions. She participated in only one homemaking session. Appellant did work with Winegardner as parent educator from May, 2001, to October, 2002. At times appellant indicated a willingness to work on parenting skills, but other times, she was disinterested and defiant. She missed numerous scheduled appointments.
 {¶ 12} The evidence reflected that appellant had difficulty understanding how her parenting affects her children. She failed to see the importance of limits, and the necessity of consistency with such limits. The evidence demonstrated that she lacked the insight to understand her role as a parent, and how to incorporate discipline into daily parenting. Because appellant failed to cooperate, and did not retain or utilize information taught during the parenting sessions, the parenting services were terminated.
 {¶ 13} The case plan also sought to have appellant maintain a stable home. From June, 2001, to the time of trial, appellant had four different residences. Upon inspection, her latest residence did not have heat in every room, was missing glass in some windows, and had wiring sticking out from the wall. She did not have telephone service, due to an outstanding telephone bill of approximately $1200.
 {¶ 14} Another concern of appellee was appellant's mental health problems. Appellee requested that appellant attend anger management counseling, individual counseling, be assessed by the county MRDD Board, and obtain a psychological evaluation. She attended all sessions of an anger management class, but was unable to utilize the information presented. She attended only two individual counseling sessions. She did not initiate the assessment by MRDD.
 {¶ 15} On November 15, 2001, appellant submitted to a psychological evaluation. The evaluation revealed that appellant demonstrated little or no insight into the events of her life. She suffers from significant cognitive limitations and dependent personality disorder. She has difficulty seeing potentially abusive situations for her children. Although she was able to state things she learned in parenting classes, she was unable to apply the information. The evaluation revealed that appellant is socially detached, and had little ability to protect herself. With her deficits, appellant's primary energy would go to providing for herself, or finding someone who would provide for her. Her immaturity made it extremely difficult for her to provide for her children's emotional needs. The evaluation demonstrated that she did not possess the cognitive nor emotional skills necessary to independently parent the children in an appropriate manner.
 {¶ 16} The court did not err in finding that the child could not be placed with appellant within a reasonable time.
 {¶ 17} The first assignment of error is overruled.
 II {¶ 18} Appellant argues that the complaint concerning Helen should have been dismissed, as the complaint failed to allege clear and essential facts supporting the claim of dependency. Appellant argues that the complaint failed to invoke the jurisdiction of the juvenile court, as it is vague in its terms.
 {¶ 19} The agency's complaint states: "Mother of said child has been working with Children's Services in regard to a half sibling for a year. Mother has significant gaps in her ability to parent the sibling of said child. Parenting gaps pose a risk of safety and well-being to said child."
 {¶ 20} The complaint was sufficient to put appellant on notice of the essential facts underlying the claim of dependency. At the time Helen was born, appellee had been working with appellant for approximately one year. A case plan was in place addressing the gaps in parenting which appellee perceived to be a problem between appellant and Ryan. The instant complaint alleged that the same issues which led to the removal of Ryan from the home, caused the agency to fear for the safety and well-being of Helen.
 {¶ 21} The assignment of error is overruled.
 {¶ 22} The judgment of the Fairfield County Common Pleas Court, Juvenile Division is affirmed.
By Gwin, P.J., Hoffman, J., and Wise, J., concur.